**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-1582**

NEWEL ALI,

                Plaintiff - Appellant,

     v.

BC ARCHITECTS ENGINEERS, PLC,

                Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Anthony John Trenga, District Judge.  (1:18-cv-01385-AJT-MSN)

Submitted:  September 4, 2020              Decided:  October 15, 2020
Amended:  October 16, 2020

Before MOTZ and WYNN, Circuit Judges, and TRAXLER, Senior Circuit Judge.

Affirmed in part, reversed in part, and remanded by unpublished per curiam opinion.

Arinderjit Dhali, DHALI PLLC, Washington, D.C., for Appellant.  Lars H. Liebeler, LARS LIEBELER P.C., Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Newel Ali,[1] an Arab-American woman, appeals from the district court's order dismissing the 42 U.S.C. § 1981 claims she filed against her former employer, BC Architects Engineers, PLC ("BC"). In her operative complaint, Ali alleges that BC refused to promote her and fired her because of her race, created a racially hostile work environment, and retaliated against her for reporting race discrimination within the company, again by failing to promote her and by firing her.

In dismissing each of Ali's § 1981 claims, the district court held that Ali failed to plausibly allege that BC had discriminated or retaliated against her on the basis of race. While we mostly agree, we find that Ali *has* sufficiently stated a retaliatory-termination claim. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

I.

Per the operative complaint, Ali was hired by BC as a computer-aided design ("CAD") drafter in March 2015. Not long into her employment, she was assigned to assist a structural engineer at the firm with his work. When that engineer left the company a few months later, BC's owners asked Ali—who has a background in structural engineering— "to stop doing work as a CAD designer" and assume his duties instead. J.A. 23.[2] As explained below, however, her time in that role would be brief.

---

[1] Although the correct spelling of the Plaintiff's first name is "Nawal," we employ the spelling used in the case caption.

[2] Citations to "J.A. __" refer to the Joint Appendix filed by the parties in this appeal.

2

On September 30, 2015, Ali arrived late to work. A "project manager" for BC, described as an "Iranian-American . . . male," yelled at her and "accused her of cheating the company by coming [in] late and leaving early." J.A. 23-24. Ali immediately complained about the project manager's conduct to BC's owners, specifically alleging that he "was discriminating against her because of her race." J.A. 24. The owners promised to investigate the incident.

A few weeks later, Ali traveled on vacation to Turkey. When she returned, she was informed that BC had placed a different employee, a "Caucasian male," in the structural engineering position and reassigned her to work exclusively as a CAD drafter. J.A. 25.

In December 2015, Ali learned that BC was looking to hire additional structural engineers. She informed one of the company's owners that she was interested in applying for those positions. However, BC ultimately hired two other people for the jobs—a "Chinese Asian male" and another man who was "maybe of a different race than Ali." J.A. 26. BC later offered Ali a different position—"project coordinator"—which she accepted. J.A. 27.

Ali traveled to Turkey again that March, apparently to help facilitate her mother moving to the United States. Upon her return, she "was demoted again from 'project coordinator' to a CAD Drafter." J.A. 27. On March 30, she spoke with BC's owners about her demotion. In the course of that conversation, Ali informed the owners of her belief that "there was discrimination in [the] company" and that, more specifically, the project manager involved in the September 30, 2015 incident continued to be "rude and condescending to women and Arabs." J.A. 28.

3

Then, on April 15, 2016, Ali emailed the owners a three-page letter "documenting discrimination and retaliation within the company." *Id.* In that email, Ali asserted that she had "experienced female gender discrimination and retaliation" during her time of employment, and that she had also been mistreated due to her national origin. J.A. 45-47. Although the email did not expressly mention race, Ali "subjectively believed" that she was complaining about racial discrimination. J.A. 28.

BC fired Ali an hour after she sent her email. This lawsuit followed.

II.

We review an order granting a Rule 12(b)(6) motion de novo. *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 685 (4th Cir. 2018). "In conducting such a review, we are obliged to accept the complaint's factual allegations as true and draw all reasonable inferences in favor of the plaintiff[]." *Id.* "However, legal conclusions pleaded as factual allegations, unwarranted inferences, unreasonable conclusions, and naked assertions devoid of further factual enhancement are not entitled to the presumption of truth." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (internal quotation marks omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

4

III.

Section 1981 provides that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Although the statute does not mention "race," the Supreme Court has interpreted it "to forbid all racial discrimination in the making of private as well as public contracts." *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609 (1987) (internal quotation marks omitted). That prohibition extends to "discrimination in private employment on the basis of race." *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 460 (1975). Thus, a person who experiences intentional race discrimination in private employment may pursue a "federal remedy" under § 1981. *Id.*

A plaintiff may ultimately prove a race-discrimination claim under § 1981 through "direct or circumstantial evidence showing that an adverse employment action was [caused] by intentional discrimination aimed at the plaintiff's [race]," or through the "burden-shifting framework" of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). However, a § 1981 plaintiff need not plead facts demonstrating that she satisfies the *McDonnell Douglas* framework to survive a motion to dismiss. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-11 (2002). Rather, to state a § 1981 race-discrimination claim, a plaintiff must allege facts making it plausible "that, but for race, [she] would not have suffered the loss of a legally protected right" under the statute. *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020).

5

On appeal, Ali challenges the district court's dismissal of her race-discrimination, hostile-work-environment, and retaliation claims. We address each in turn.

A.

Ali first claims that BC refused to promote her and, eventually, fired her because of her race. In support of her refusal-to-promote claim, Ali alleges that she applied for the position of structural engineer, that she was qualified for the position, and that someone of a different race was selected for the position. Standing alone, however, those factual allegations are insufficient to support a plausible race-discrimination claim. *See Bing v. Brivo Sys., LLC*, 959 F.3d 605, 617-18 (4th Cir. 2020); *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 586 (4th Cir. 2015).[3] And we are unpersuaded that Ali's additional allegations—for instance, that a white man assumed her temporary structural engineering duties after her return home from Turkey in November 2015—support a reasonable inference of intentional race discrimination. *See McCleary-Evans*, 780 F.3d at 586; *Spriggs v. Diamond Auto Glass*, 165 F.3d 1015, 1018 (4th Cir. 1999). In fact, Ali specifically alleged that BC did not want her working as a structural engineer for an entirely non-discriminatory reason: she was a talented CAD designer, and BC did not want to move her from that role until they could "find a CAD drafter as good as [her]." J.A. 27; *see Bing*, 959 F.3d at 617. We are therefore satisfied that the district

---

[3] Although *Bing* and *McCleary-Evans* assessed claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, we have recognized the similarity of a race discrimination claim pursued under that statute and one pursued under § 1981. *See Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004).

court properly dismissed Ali's race-discrimination claim predicated on BC's refusal to promote her.

The same goes for Ali's claim that she was fired because of her race. In support of that claim, Ali specifically alleges that BC hired a non-Arab person to replace her, and that BC treated other, non-Arab employees more considerately when terminating them—for example, by giving them adequate time to collect their personal belongings. Once again, however, these allegations are insufficient to support a reasonable inference of intentional race discrimination. *See McCleary-Evans*, 780 F.3d at 586. And Ali's remaining allegations in support of her discriminatory-termination claim are too speculative and nonspecific to defeat a Rule 12(b)(6) motion. *See Bing*, 959 F.3d at 618; *Wikimedia Found.*, 857 F.3d at 208. We thus conclude that the district court correctly dismissed Ali's race-discrimination claim based on her termination.[4]

B.

A plaintiff may also pursue a hostile-work-environment claim under § 1981. *See Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (en banc). A hostile work environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."

---

[4] To the extent that Ali might maintain that the district court erred by dismissing her race-discrimination claim predicated on a reassignment of duties in November 2015, we are satisfied that the claim was properly dismissed because the operative complaint fails to plausibly allege that the reassignment of duties was an adverse employment action. *See James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375-77 (4th Cir. 2004).

7

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citation and quotation marks omitted). And to state a hostile-work-environment claim under § 1981, a plaintiff must allege that "there is (1) unwelcome conduct; (2) that is based on the plaintiff's [race]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Guessous*, 828 F.3d at 221.

Ali focuses on several details in the operative complaint that, she contends, make her hostile-work-environment claim plausible: that BC's owners repeatedly asked about her travels to Turkey; that she was demoted—twice—after those travels; and that, at the time she was fired, an owner commented that she was being terminated, in part, for "bringing [her] mother's problems" into the workplace. J.A. 24-29. But the operative complaint fails to support a reasonable inference that any of that conduct related to Ali's race. And even if BC's conduct was racially tinged, the operative complaint does not plausibly allege that such conduct was severe or pervasive enough to alter Ali's conditions of employment and create an abusive work environment. *See id.* Accordingly, the district court properly dismissed Ali's hostile-work-environment claim.

C.

Finally, Ali contends that the district court erred by dismissing her retaliation claims. Section 1981 "encompasses retaliation claims" for opposing race discrimination in employment. *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 446 (2008). An employee opposes race discrimination when she "communicates to her employer a belief that the employer has engaged in" such discrimination. *Crawford v. Metro. Gov't of Nashville &*

8

*Davidson Cnty., Tenn.*, 555 U.S. 271, 276 (2009) (alteration and internal quotation marks omitted). An employee is protected from retaliation not only for reporting "employment actions actually unlawful under [§ 1981] but also employment actions she reasonably believes to be unlawful." *Boyer-Liberto*, 786 F.3d at 282 (alterations and internal quotation marks omitted). And in line with other § 1981 claims, to state a § 1981 retaliation claim, a plaintiff must allege facts rendering it plausible that, but for her participation in protected activity, she would not have suffered a materially adverse action. *See Guessous*, 828 F.3d at 217-18; *cf. Comcast Corp.*, 140 S. Ct. at 1019.

Ali alleges that she was denied a promotion to structural engineer, in part, because she orally complained about race discrimination within the company about three months before applying for the position. However, the temporal proximity between that reporting and BC's failure to select her for the position is too tenuous to support a reasonable inference of causation. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (explaining that temporal proximity may suffice to establish causation when protected activity and adverse action are "very close" and relying on decisions ruling that three- and four-month intervals were insufficient (internal quotation marks omitted)); *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003) (explaining that ten-week period between protected activity and employment action is generally "sufficiently long so as to weaken significantly the inference of causation between the two events"). And as discussed above, any inference of retaliation is further weakened by the operative complaint's allegation that Ali was not selected for the structural engineer position because she was more valuable to

9

BC as a CAD drafter.  *See Bing*, 959 F.3d at 617.  Accordingly, the district court properly dismissed Ali's claim that BC retaliated against her by denying her a promotion.

In contrast, we conclude that Ali has sufficiently stated a claim for retaliatory termination, and that the district court erred in dismissing that claim.  Ali alleges that she made another oral report of racial discrimination to BC's owners on March 30, 2016.  She further alleges that her work performance was satisfactory throughout her tenure, and that she was fired on April 15, 2016.[5]  The district court never mentioned the March 30, 2016 report in assessing Ali's retaliation claim.  But the timing of that report is significant.  Unlike the three-month gap between Ali's initial complaint and BC's failure to promote her, a mere two weeks passed between Ali's March 30 report and her firing; a "close temporal proximity" that supports an inference of causation.  *See Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 575 (4th Cir. 2015).  Moreover, Ali alleges that, in the time between her March 30 report and her firing, she was twice denied reasonable requests to work from home to care for her sick son—the inference being that BC became hostile

---

[5] BC suggests that we need not accept as true Ali's allegation that she reported racial discrimination to BC's owners about two weeks before her termination.  According to BC, Ali's allegation is contradicted by an exhibit attached to its motion to dismiss.  We reject BC's contention, however, because any such contradiction is insufficiently clear to override our obligation to accept the operative complaint's factual allegations as true.  *See Feminist Majority Found.*, 911 F.3d at 685.  Relatedly, because we rely on Ali's March 30, 2016 oral complaint of race discrimination to resolve whether the district court properly dismissed her retaliatory-termination claim, we need not decide whether Ali's April 15, 2016 email also complained of racial discrimination, as the complaint indicates she subjectively believed.

toward her after she made her report.  Taking these allegations together, we are satisfied that Ali has plausibly stated a retaliatory-termination claim under § 1981.

IV.

Pursuant to the foregoing, we affirm the district court's dismissal of Ali's claims for race discrimination, hostile work environment, and retaliatory failure to promote.  We reverse the dismissal of Ali's retaliatory-termination claim, however, and remand for further proceedings.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED IN PART, REVERSED IN PART,*
*AND REMANDED*
